IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ETTA LOWERY**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-1886-L |
| | § | |
| **ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, et al.**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Remand, filed November 13, 2006. After careful consideration of the motion and brief, response, reply, record and applicable authority, the court, for the reason stated herein, **denies** Plaintiff's Motion to Remand.

### I. Background

Plaintiff Etta Lowery ("Lowery" or "Plaintiff") filed this civil action on August 25, 2006 in the 68th Judicial District Court, Dallas County, Texas, against Defendants Allstate Texas Lloyd's Inc., a/k/a Allstate Insurance Company, and Allstate County Mutual Insurance Company, a/k/a Allstate Insurance Company, collectively referred to as "Allstate"; Sandra Mobley ("Mobley"); and Brian Viohl ("Viohl"), all collectively referred to as "Defendants."

Lowery contends that she was discriminated against and harassed by Defendant Allstate because of her race and age in violation of the Texas Commission on Human Rights Act. She also contends that Defendant Allstate terminated Plaintiff's employment in retaliation for her making race and age discrimination complaints. In addition, Plaintiff contends that Defendants Mobley and Viohl made defamatory statements about her work ability that have damaged her reputation.

**Memorandum Opinion and Order - Page 1**

Allstate denies Plaintiff's allegations of unlawful discrimination, retaliation and harassment. Allstate maintains that Plaintiff cannot establish a *prima facie* case under the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.051, *et seq*. Allstate contends that all actions taken by it with respect to Plaintiff were for legitimate, business-related and nondiscriminatory and nonretaliatory reasons. Defendants Mobley and Viohl deny Plaintiff's allegations of defamation. Mobley and Viohl contend that Plaintiff cannot establish a *prima facie* case of defamation, that any alleged statements made by Mobley and Viohl about Plaintiff were not defamatory as a matter of law and are otherwise barred by the truth or substantial truth of the alleged statements. To the extent any such alleged defamatory statements were made, Mobley and Viohl contend that they were made in good faith, honesty, and without malice, or consented to by Plaintiff.

On October 13, 2006, Defendants removed this action to federal court on grounds that diversity of citizenship exists between the parties, except for Defendant Viohl, and that the amount in controversy, exclusive of interest and costs, exceeds $75,000. Plaintiff has filed a motion to remand to state court, contending that this court lacks subject matter jurisdiction because complete diversity does not exist between the parties. Specifically, Plaintiff contends that she has stated a valid cause of action for defamation against Viohl, a Texas citizen, and that he was therefore properly joined as a defendant. Defendants contend that Plaintiff cannot state a claim for defamation against Viohl, and that he was improperly or fraudulently joined to defeat diversity. They contend that removal was therefore proper and that remand should be denied.

**II. Improper Joinder Standard**

A party seeking to remove an action to federal court on the basis of fraudulent or improper joinder bears a heavy burden. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 992 (2005). In *Smallwood*, the court "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred." *Id.* at 572. Accordingly, the court uses the term "improper joinder" in this opinion.

As the parties wishing to invoke federal jurisdiction by alleging improper joinder, Defendants must establish that Defendant Viohl was joined by Plaintiff Lowery to defeat diversity of citizenship and therefore subject matter jurisdiction. Subject matter jurisdiction based on diversity of citizenship exists only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)), *cert. denied*, 541 U.S. 1073 (2004). In considering citizenship, however, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).

To establish improper joinder, Defendants must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the

non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since Defendants do not assert fraud by Plaintiff, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).

In addressing this issue, the district court must determine whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust*, 313 F.3d at 312 (internal quotations and citations omitted). "This possibility, however, must be reasonable, not merely theoretical." *Id*. If there is a reasonable possibility that Plaintiff can recover on any of her claims, the case must be remanded. In making this determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted).

In deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant"; or (2) in limited circumstances, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.

**Memorandum Opinion and Order - Page 4**

"When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the petition for removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990); *see also Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 326 (5th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999). Accordingly, the propriety of removing this case to federal court will turn on the allegations in Plaintiff's Original Petition ("Petition").[*]

### III. Analysis

In reviewing the Petition, the court notes the following allegations which appear to relate to Plaintiff's claim of defamation against Viohl:

> 16. In February of 2005, Plaintiff attempted to make contact with someone in the Allstate organization regarding the sequence of events which was causing Plaintiff's career downfall. Finally, in early March 2005, Sandra Mobley and Allstate's Human Resources Manager met with Plaintiff. However, rather than addressing Plaintiff's concerns, Plaintiff was terminated – being told that her position was being eliminated. Plaintiff was also given a personalized fact sheet informing Plaintiff that her termination date was due to reduction in force (RIF). Allstate then collected Plaintiff's computer, company ID badge, corporate credit card, and Plaintiff was told that she had to return her company vehicle (although Plaintiff was later told that she could keep the vehicle). Plaintiff continued to receive her salary and benefits until a package arrived dated September 19, 2005, informing her she was terminated effective September 30, 2005. It is important to note that in August 2005, (while Plaintiff remained on Defendant's payroll), there were many positions that she could have filled, including a newly named sales position that remained open until it was filled by a younger-Caucasian male. Although Plaintiff was still on the payroll, this position, (for which she was highly qualified), was not offered to her. Brian Viohl also overlooked Plaintiff for many other potential sales/job opportunities, that were given to other employees that had less experience and seniority. Defendant's reasoning for Plaintiff's poor treatment, refusal to provide additional positions, and termination was merely pre-textual, as the real reasons for these actions was her race and in retaliation for complaining about racial discrimination in the workplace.

---

[*] For the reasons later stated by the court, a summary inquiry does not establish that Plaintiff Lowery can establish a defamation claim against Defendant Viohl.

**Memorandum Opinion and Order - Page 5**

> 17.    In addition, Defendants Sandra Mobley and Brian Viohl have made false accusations about Plaintiff's work ability that have damaged her reputation, and have limited Plaintiff's ability to obtain adequate employment elsewhere.
>
> . . .
>
> 29.    Defendants, Mobley and Viohl[,] maliciously published slanderous communications about Plaintiff that (a) injured her reputation, (b) exposed her to public hatred contempt, and financial injury, and (c) impeached Plaintiff's honesty and integrity. In addition, these false statements adversely reflected on Plaintiff's job fitness.  As a result, Defendant[']s actions constitute both defamation, and defamation *per se*.

Plaintiff's Original Petition ¶¶ 16, 17, and 29.  The court has included paragraph 16 only to put the factual background in perspective.  This paragraph makes no allegations to even arguably support a claim for defamation; paragraph 16 only alleges matters which one routinely and typically finds in workplace disputes regarding claims of discrimination and retaliation.

In her Petition, Plaintiff seeks to allege a cause of action against Mobley and Viohl for defamation.  Under Texas law, a defamatory statement is one in which the words tend to damage a person's reputation, exposing her public hatred, contempt, ridicule, or financial injury. *Einhorn v. LaChance*, 823 S.W.2d 405, 410-11 (Tex. App. – Houston [1st Dist.] 1992, writ dism'd w.o.j.), *cert. denied*, 517 U.S. 1135 (1996).  Texas law recognizes two types of defamation: libel and slander.  An action for libel requires the publication of a written defamatory statement about the plaintiff to a third party. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 633-634 (Tex. App. – Houston [14th Dist.] 1992, writ denied).  Slander is an oral defamation published to a third party without legal excuse. *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 91 (Tex. App. – Corpus Christi 1992, writ dism'd w.o.j.).  To maintain a cause of action for defamation, a plaintiff must state facts which would show that the defendant (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was

a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *Evans v. Dolcefino*, 986 S.W.2d 69, 76 (Tex. App. – Hous. [1 Dist.] 1999, no pet.) (*citing WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

The allegations regarding Plaintiff's defamation claim do not state that the allegedly defamatory statements were made to a third party, and the court cannot reasonably infer from the bare-bones pleading that any allegedly defamatory statements were made or published to a third party. The allegations regarding defamation are therefore simply too slender of a reed to maintain an action for defamation under state law.

As *Smallwood* teaches, the issue of improper joinder should ordinarily be resolved by a Rule 12(b)(6)-type analysis. In cases, however, where a plaintiff has "misstated or omitted discrete facts," a court may go beyond the pleadings and conduct a summary inquiry to determine whether recovery would be precluded against the in-state defendant. Although the court is not convinced that a summary inquiry is necessary, such an inquiry does not save the day for Plaintiff. In her affidavit, Lowery states:

> 4. I was given a document stating, "I had reached my potential." This document had been forwarded to Human Resources department in the Texas Region, (including Gary Briggs, Vice President, Texas Region). Other Allstate personnel informed me that **Brian Viohl** made the following statements to those in Home Office and in the Texas Region: (a) I did not have the skills to be able to perform the tasks of the position; (b) I was not qualified for the position; and (c) I would not be able to fit into the new sales structure that Allstate was implementing. All of these statements are untruths about my work that I believe prevented me from continuing employment with Allstate in other positions.

Affidavit of Etta Lowery ¶ 4 (emphasis in original). From the plain reading of the affidavit, the statements allegedly made by Viohl were to *other Allstate personnel, not to third parties*. Moreover, Plaintiff's concern is her inability to continue employment with Allstate in other positions for which

she might be suitable. Lowery, even with a second "bite at the apple," does not convince the court that she can satisfy a necessary element of a cause of action for a defamation, that is, that the allegedly defamatory statements were made or published to a third party. While this court has viewed the allegations in the light most favorable to Plaintiff, it will not *strain* to find inferences favorable to her, or accept unwarranted deductions or legal conclusions.

### IV. Conclusion

For the reasons herein stated, the court determines that there is no reasonable basis for predicting that Plaintiff Etta Lowery could, as pleaded in her state court petition, recover under a theory of defamation against Defendant Viohl under Texas law. The court concludes that Defendant Viohl was therefore improperly joined to defeat jurisdiction in federal court. Accordingly, the court **denies** Plaintiff's Motion to Remand.

**It is so ordered** this 23rd day of April, 2007.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge