IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ETTA LOWERY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. **3:06-CV-1886-L** |
| v. | § | |
| | § | |
| **ALLSTATE TEXAS LLOYDS, INC.,** | § | |
| **et al.,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Defendants Sandra Mobly and Brian Viohl['s] Motion to Dismiss,

filed June 25, 2007; and (2) Defendants' Motion for Summary Judgment, filed September 7, 2007.

After considering the motions, briefing, record, and applicable law, the court **grants** Defendants

Sandra Mobly and Brian Viohl['s] Motion to Dismiss and **grants** Defendants' Motion for Summary

Judgment.

## I.    Factual and Procedural Background

Plaintiff Etta Lowery ("Plaintiff" or "Lowery") filed her Original Petition on August 15,

2006 in the 68th Judicial District Court, Dallas County, Texas.  Plaintiff brought a claim for race and

age discrimination and retaliation in violation of the Texas Commission on Human Rights Act,

Texas Labor Code § 21.001, *et seq.*, against Defendants Allstate Texas Lloyd's, Inc. d/b/a Allstate

Insurance and Allstate County Mutual Insurance Company d/b/a Allstate Insurance (collectively,

"Allstate").  She also brought a defamation claim against Defendants Sandra Mobly and Brian

Viohl.  Defendants removed the case to this court on October 13, 2006.

## A. Plaintiff's Employment with Allstate

Plaintiff began her employment with Defendant Allstate in 1982 in Milwaukee, Wisconsin. Pl. App. 53.[1] She worked as an agent, assistant market sales manager, and market sales manager in Milwaukee. *Id.* Lowery received several Allstate awards for her work, including the Chairman's Inner Circle Award (1999-2000), the Chairman's Conference Award (1996-2001), and the Key Manager Award (1996-2002). *Id.* at 546. Allstate relocated Lowery to Texas as part of the resolution of a racial discrimination lawsuit she had filed against it. *Id.* at 17, 57, 60.

In Texas, Plaintiff was a Market Business Consultant ("MBC") for Allstate, and she was employed in the Texas region from 1995 until 2005. *Id.* at 82; Def. App. 1 (Carnes Decl. ¶ 2). MBCs "were responsible for consulting with Allstate exclusive agents within a geographical area to help with the marketing, business practices, and service of Allstate customers." Def. App. 1 (Carnes Decl. ¶ 4). Plaintiff alleges that while she was an Allstate MBC in Texas, she received a Masters in Business Administration and a Certificate of Dispute Resolution from Southern Methodist University. Pl. App. 25, 173. When she began her employment in Texas, Lowery was supervised by T.J. Nicholson. *Id.* at 83. Nicholson testified that Lowery "consistently achieved and

---

[1]Plaintiff filed a 712-page appendix in opposition to the motion for summary judgment. The appendix includes the complete transcripts of ten depositions, including hundreds of pages of transcripts that reduce four pages of deposition transcript to a single page. This unwieldy appendix violates the scheduling order in this case. *See* Scheduling Order ¶ 3 (Nov. 30, 2006) ("***When submitting materials on dispositive motions, the parties are instructed not to unduly burden the record, and shall submit only that evidence which is actually relevant to supporting or opposing the dispositive motions of the part[ies]. For example, do not submit the entire deposition of a witness; submit only those pages that are necessary to identify the deponent's connection to the case and establish the point a party desires to make***.") (emphasis in original). The court is under no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006). Accordingly, the court refers to the portions of the appendices cited by the parties in determining this motion. The court frowns on this type of mass submission, as it unnecessarily burdens the record and consumes scarce judicial resources, and does not expect counsel to disregard the court's instructions in future filings.

exceeded the results that she was responsible for." *Id*. at 411. Ultimately, Defendant Mobly became Plaintiff's supervisor. *Id*. at 84.

Plaintiff received annual performance evaluations. Although she received favorable performance ratings between 1995 and 2000, they declined thereafter. In 2002, she received an "exceeds" rating for her performance during 2001. *Id*. at 342. In 2003, Lowery received a "meets" evaluation. *Id*. at 135. In 2004, she received a "requires improvement" evaluation. Def. App. 269. During that year, she also received an "Unacceptable Performance Notification." *Id*. at 291-98. In 2005, her performance was rated "unacceptable." *Id*. at 305.

Lowery contends that her performance rating declined in 2003 because Allstate based her review upon individual performance, rather than the performance of her team. Pl. App. 134-36. She states that Allstate changed its method of review from team to individual performance, but that Mobly failed to inform her until the "eleventh hour," despite other employees being told early in the year that they would be individually evaluated. *Id*. at 135-36.

She alleges that her 2004 performance review was lower because Mobly placed her on a temporary assignment, the American Heritage Project, for much of 2003. *Id*. at 104. When the project ended in September 2003, and Plaintiff returned to her previous territory, she states that several of her highest producing agents had been transferred to other MBCs and not returned to her. *Id*. at 113-17. She contends that when she returned as an MBC in September 2003, she was given unrealistic goals and lower-producing agents. *Id*. at 117. Plaintiff also points out that Mobly admits that she did not speak with Lowery's American Heritage team leader when preparing her 2004 review. *Id*. at 349.

Plaintiff states that she made repeated complaints about what she believed was racially motivated discrimination against her. Lowery sent a letter to Ross Carnes, Allstate's Human Resources Manager for the Texas Region, on October 12, 2003, alleging that she faced "consistent discriminatory treatment" from Mobly. *Id.* at 642. On February 26, 2004, Lowery sent a letter to Mobley, Carnes, and Gary Briggs regarding "[Plaintiff's] Professional and Personal Concerns." *Id.* at 581. The letter outlined several issues Plaintiff had had with Mobly as her supervisor, but there is no mention of discrimination in the letter. *Id.* at 581-84. Plaintiff sent another letter, dated March 23, 2004, to Ross Carnes. *Id.* at 599-600. In this letter, she specifically referred to being treated "unfairly" and stated that she "encountered discriminatory treatment that I assert is racially based because I am a competent black female who is the only black female Business Consultant in Tarrant County." *Id.* at 599. She referred Carnes to her attorney and stated that Allstate had engaged in "blatant racism." *Id.* at 600. Plaintiff retained an attorney, Nola Cross, who sent another letter to Allstate on April 15, 2004 complaining of race discrimination. *Id.* at 601-602. Plaintiff alleges that Defendant never responded to her complaints of racial discrimination.

## B.     Allstate's 2005 Reduction-in-Force

Allstate decided in 2004 to restructure its field leadership team, including eliminating all MBC positions. Def. App. 1 (Carnes Decl. ¶¶ 3-4). In its place, Defendant created four new job positions and filled them with incumbent MBCs, except for Plaintiff and five other MBCs who were terminated in 2005. *Id.* at 1-2 (Carnes Decl. ¶¶ 4,9). Defendant used three criteria to determine which employees would be terminated: company need, current performance rating, and length of employment with Allstate for those employees with equal performance ratings. *Id.* at 2 (Carnes Decl. ¶ 7). Four MBCs who were terminated, including Plaintiff, had 2005 performance ratings of

"Unacceptable." *Id*. at 11-12. The other two MBCs had a "Fair" rating. *Id*. at 11. Two of the terminated MBCs are black, and four are not. *Id*. at 4. Four of the MBCs who were retained after the reduction-in-force and placed in the newly-created job positions are black. *Id*. The age range of the terminated MBCs was 38 to 62. *Id*.

The parties dispute when Plaintiff was informed of her termination and the date of her termination. According to Defendant, Plaintiff, Mobly, and Carnes met on March 7, 2005, and she was told that her position had been eliminated and that she was eligible for severance benefits. *Id*. at 3 (Carnes Decl. ¶ 12), 84-86. She turned in her computer, employee identification card, and company credit card on that day. *Id*. at 91-92. A letter to Plaintiff dated March 7, 2005 stated that her "position as a Market Business Consultant is being eliminated" and that "should you either not be offered a position or should you choose not to accept an offer for an alternative position at Allstate by May 6, 2005, your employment will be terminated." *Id*. at 20.

Defendant, however, delayed the effective date of Plaintiff's termination until September 30, 2005. *Id*. at 312. During this time, the parties negotiated over the terms of Plaintiff's separation that might allow her to receive retiree medical benefits. *Id*. at 111-13. Plaintiff did not work during this time, but did receive her salary and benefits. *Id*. at 107-08. Defendant notified Plaintiff on September 19, 2005 that her salary continuation would end on September 30. *Id*. at 312.

### C.     Plaintiff's Response

Plaintiff sent a letter to Defendant dated September 21, 2005 stating that she "did not receive[] notice in March that my position had been eliminated." Pl. App. 635. On October 27, 2005, Lowery filed a charge of discrimination alleging discrimination and retaliation with the Texas Workforce Commission Civil Rights Division. Def. App. 316-17. The charge was notarized on

November 13, 2005. *Id*. at 362-63. In a letter dated June 2, 2006, the EEOC sent a letter to counsel for Plaintiff stating that the charge would be dismissed and that "[t]here are no indications that your client[']s race, color, age, retaliation, or any other prohibited factor was involved in the employer's actions." *Id*. at 366. Thereafter, Plaintiff filed her Original Petition in state court.

## II.     Motion to Dismiss

Defendants Sandra Mobly and Brian Viohl move to dismiss the defamation claim against them. After the motion to dismiss was filed, Plaintiff moved to amend her petition and sought leave to amend, in part, to "remove certain Defendants from the Complaint (along with some state causes of action)." Mot. for Leave to Amend (doc. 22), 1. In her proposed amended complaint, Plaintiff omitted Mobly and Viohl as Defendants and omitted her claim for defamation. In response to the motion to dismiss, Plaintiff state that she did not oppose the dismissal of Mobly and Viohl "as Plaintiff has indicated in her most recent pleading." Pl. Resp. (doc. 32), 1.

The court, however, denied her motion for leave to amend and did not allow Plaintiff to file an amended complaint. Plaintiff has indicated that she is unopposed to the motion to dismiss. Accordingly, the court **grants** Sandra Mobly and Brian Viohl[']s Motion to Dismiss.

## III.    Motion for Summary Judgment

### A.     Legal Standard for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact

is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed

fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**B.      Analysis**

Defendant argues that Plaintiff's claims should be dismissed because they are time-barred and because she cannot establish a *prima facie* case of discrimination. It contends that the retaliation claim should be dismissed because Plaintiff can neither establish a *prima facie* case nor provide admissible evidence of pretext. The court also notes that although Plaintiff pleaded claims of race and age discrimination, she did not respond to Defendant's motion with respect to her age discrimination claims. Accordingly, the court concludes that Plaintiff has abandoned her age discrimination claim, and it is no longer before the court. The court therefore considers only the remaining claims: race discrimination and retaliation.

**1.      Timeliness of Plaintiff's Charge of Discrimination**

Defendant argues that Plaintiff failed to comply with the 180-day deadline for filing a charge of discrimination or retaliation under Texas law. Specifically, Defendant contends that Plaintiff was terminated on March 7, 2005, but that she failed to file a charge of discrimination until October 27, 2005. Plaintiff responds that she did not actually learn of her termination until September 2005 and that it was not until that time that the 180-day clock began to run.

Section 21.202(a) of the Texas Labor Code provides: "A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." The Texas Supreme Court has held that "[t]his time limit is mandatory and

jurisdictional." *Specialty Retailers, Inc. v. DeMoranville*, 993 S.W.2d 490, 291 (Tex. 1996) (citing *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485-86 (Tex. 1991)). Accordingly, if Plaintiff was terminated on March 7, 2005, the 180-day deadline would have expired in early September 2005. If, however, Plaintiff did not learn of her termination until September 2005, her charge of discrimination was timely filed.

Defendant argues that it provided Plaintiff with unequivocal notice that her position was terminated on March 7, 2005, and that Plaintiff admits this. On that date, Defendant contends that Plaintiff met with Carnes and Mobly, and Carnes states that during that meeting, Plaintiff "was notified . . . that her MBC position was being eliminated." Def. App. 3 (Carnes Decl. ¶12). During the meeting, Carnes provided Lowery with a letter that stated that her position was being eliminated. *Id*. at 311. In her deposition, Lowery admitted that she received the letter on March 7, 2005. *Id*. at 88. Defendant also points to Lowery's deposition testimony that indicates that she was informed in March 2005 that her employment was being terminated:

> Q.   This letter advised you that you would have until May 6, 2005, to find other employment within Allstate; is that correct?
> A.   Yes.
> Q.   And so you were aware at least as of March 7, 2005, that your employment would be terminated.
> A.   I thought it was going to be terminated, but it was not terminated.
> Q.   As of March 7, 2005, you were notified that your employment would be terminated on March 6 – I'm sorry – May 6, 2005, correct?
> A.   That's what the – yes.

*Id.* at 89. Lowery also testified that she knew that she would not be hired for another position at Allstate. "Ross Carnes told me that there would be no way [Plaintiff would be hired] because he said that once you get an unacceptable rating, you will not be able to get another position in Allstate

Insurance Company." *Id*. at 91. Defendant also notes that on March 7, 2007, Plaintiff returned her employee ID badge, credit card, and computer. *Id*. at 91-92.

Plaintiff argues that the March 7, 2005 letter did not terminate her employment, but simply notified her that termination *might* occur. She contends that she did not receive clear notice of termination until she received the September 19, 2005 letter that stated: "This letter is formal notification that your employment is being terminated effective Friday September 30, 2005." Pl. App. 633. Plaintiff sent a letter to Defendant, dated September 21, 2005, that stated: "[P]lease be advised that I did not receive[] notice in March that my position had been eliminated." *Id*. at 635. She argues, therefore, that the September letter from Allstate was the first unequivocal notice that her employment was terminated.

As Defendant points out, under Texas law, "[t]he limitations period begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition." *DeMoranville*, 933 S.W.2d at 493 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980); *Price v. Litton Business Sys., Inc*., 694 F.2d 963, 965 (4th Cir. 1982)). The Supreme Court has held that "[t]he proper focus in upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts become most painful." *Ricks*, 449 U.S. at 258 (emphasis in original).

Plaintiff argues, however, that notice was not the unequivocal notice required under Texas law. She cites *Texas Parks and Wildlife Department v. Dearing*, in which the court found that whether the plaintiff knew of the adverse employment decision – a reclassification – was a fact question. 150 S.W.3d 452, 459 (Tex. App. – Austin 2004, pet. denied), *cert. denied*, 544 U.S. 960 (2005). In distinguishing *DeMoranville*, that court noted that "that case concerned an employer's

established company policy and unequivocal communication to the employee that the policy would be enforced as to her, rather than an employer's decision to take a future action based on new legislation giving it authority for the first time to do so." *Dearing*, 150 S.W.3d at 459 (citing *DeMoranville*, 933 S.W.2d at 492-93).

The court concludes that this case is more similar to *DeMoranville* than to *Dearing*. The court finds that a reasonable person would have been on unequivocal notice on March 7, 2005 that her employment had been terminated. *See Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 928 (Tex. 1996) ("[T]he limitations period for a suit for wrongful termination . . . will commence when the employee receives unequivocal notice of his termination or when a reasonable person would know of his termination.") (quoting *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 134 (5th Cir.), *cert. denied*, 506 U.S. 845 (1992)). On that date, Plaintiff received a letter stating that her employment would be terminated on May 6, 2005 if she did not receive another job with Allstate; she was informed that her unacceptable performance review made her ineligible for any other Allstate job; and she returned her company credit card, computer, and ID badge. There is no competent evidence presented that Plaintiff had any reason to believe that her employment would continue after March 7, 2005. Accordingly, the 180-day clock began to run on March 7, 2005, and expired in early September 2005. Because of Plaintiff's failure to file a charge of discrimination until October 27, 2005, the court concludes that her discrimination and retaliation claims are time-barred pursuant to section 21.202(a). Accordingly, there is no genuine issue of material fact regarding the timeliness of Plaintiff's charge of discrimination, and Allstate is entitled to judgment as a matter of law on these claims.

### 2. Race Discrimination

Even if Plaintiff's discrimination claim is not time-barred, the court determines that summary judgment on her discrimination claim is proper. Plaintiff's state race discrimination claim is analyzed under the same evidentiary standard and same burden-shifting approach as cases brought pursuant to Title VII. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999); *Schroeder*, 813 S.W.2d at 485.

To survive a motion for summary judgment, a plaintiff in a Title VII discrimination case must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04. If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for intentional discrimination. *Id.*

The third step of the *McDonnell Douglas* test has been altered by the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (holding that in Title VII cases, the mixed-motive theory of discrimination is available in cases with circumstantial evidence of discrimination). In light of *Desert Palace*, the Fifth Circuit has modified the final step of *McDonnell Douglas. See Rachid v. Jack in the Box, Inc*., 376 F.3d 305, 312 (5th Cir. 2004). In order to survive summary judgment under the modified *McDonnell Douglas* test, at the final step, a plaintiff must offer sufficient evidence to create a genuine issue of fact that either: (1) a defendant's reason is not true, but is instead a pretext for discrimination, or (2) a defendant's reason, though true, is only one

of the reasons for its conduct and that another "motivating factor" is the plaintiff's protected characteristic. *Id.*; *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005) (same).

After a Title VII case reaches the pretext stage, the question to be decided for the resolution of a motion for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of race. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003). "Pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment or judgment as a matter of law. *See Reeves*, 530 U.S. at 148; *Sandstad*, 309 F.3d at 897. This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. On the other hand, in the context of an unlawful discrimination or retaliation claim, summary judgment is inappropriate "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable

inference that [race] was a determinative factor in the actions of which plaintiff complains." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 373 n. 23 (5th Cir.), *reh'g denied*, 232 F.3d 212 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996)) (en banc).

In a reduction-in-force case, as here, a plaintiff must establish the following for a *prima facie* case of race discrimination: (1) she is a member of a protected class; (2) she was adversely affected by the employer's decision; (3) she was qualified to assume another position; and (4) others who were not members of the protected class remained in similar positions. *Bauer v. Albermarle Corp.,* 169 F.3d 962, 966 (5th Cir. 1999) (citations omitted). In reduction-in-force cases, Texas courts have held that "[t]he appropriate inquiry is whether . . . other workers outside the protected class were treated more favorably." *Trico Techs. Corp. v. Rodriguez*, 907 S.W.2d 650, 653 (Tex. App. – Corpus Christi 1995, no writ).

The court assumes, without deciding, that Plaintiff has met her burden and established a *prima facie* case of discrimination. The court determines that her Unacceptable rating, as well as company need and her seniority, was a legitimate, nondiscriminatory reason to include Lowery in the reduction-in-force.

The court also concludes that Lowery has not provided any evidence of any discriminatory intent or pretext that might rebut Allstate's legitimate, nondiscriminatory reason. Plaintiff contends that her performance ratings from prior years were discriminatory, and that Allstate failed to investigate earlier claims of racial discrimination. She did not file any charge of discrimination based upon her prior performance reviews, however, and as the Supreme Court recently observed:

> [Plaintiff] relies on the intent associated with other decisions made by
> other persons at other times. . . . [Plaintiff's] attempt to take the intent

associated with the prior . . . decisions . . . is unsound. It would shift intent from one act (the act that consummates the discriminatory employment practice) to a later act that was not performed with bias or discriminatory motive. The effect of this shift would be to impose liability in the absence of the requisite intent.

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S.Ct. 2162, 2169-70 (2007).

Plaintiff also argues that she was more qualified than certain non-protected employees who were retained after the reduction-in-force. Allstate used three criteria in determining which employees would remain after the reduction-in-force: company need, current performance rating, and length of employment with Allstate. Her argument regarding certain allegedly less-qualified non-protected employees does not take into account that the qualifications she points to – including her MBA – had no bearing on Allstate's criteria for reduction-in-force decisions.

The court concludes that because Plaintiff cannot show that non-protected employees were treated differently than she was and there is no evidence of any discriminatory intent, even if her race discrimination claim is timely, it should be dismissed for failure to raise a genuine issue of material fact. Because the court finds that summary judgment on Lowery's race discrimination claim is appropriate even if it is timely, the court does not consider the remaining arguments made by the parties.

### 3. Retaliation

Plaintiff's retaliation claim is also time barred because she failed to file her charge of discrimination within 180 days of her notice of her termination. Even if her retaliation claim is timely, Defendant moves to dismiss it, arguing that her claim rests upon a charge of race discrimination claim made in 1993, the only basis alleged in her charge of discrimination. In the "discrimination statement" of Plaintiff's charge, she states "I believe that I have been discriminated

against because of my race and color, Black, age, 50 and in retaliation for filing a previous charge of discrimination in 1993." Def. App. 363. Plaintiff argues that she made other complaints of discrimination during her employment at Allstate, and that Defendant retaliated against her by giving her poor performance reviews and ultimately terminating her employment.

Under the TCHRA, the elements of a retaliation claim are: "1) that [plaintiff] engaged in a protected activity; that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (citing *Gee v. Principi*, 289 F.3d 342, 245 (5th Cir. 2002)); *see also McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548, 555 (Tex. App. – Dallas 2006, no pet.) (citations omitted). Defendant argues that there is no evidence of any connection between Plaintiff's 1993 discrimination charge or later letters and her termination as part of the reduction-in-force. Plaintiff argues that she made several complaints about discrimination against Allstate, and these were the basis for its retaliatory termination of her employment.

The court concludes that even if this claim is timely, Plaintiff fails to establish a retaliation claim. Plaintiff's 1993 charge of discrimination was made more than ten years before her employment was terminated. The interval between this alleged protected activity and the adverse employment act is simply too long for the court to find any link to her termination. As the Fifth Circuit has held, an interval of six years between protected activity and an adverse employment action "creates a strong presumption against retaliation." *Patton v. Schlumberger Tech. Corp.*, 95 F.3d 1148, *3 (5th Cir. 1996). In this case, the interval is longer than that in *Patton*, and the "strong presumption against retaliation" is even stronger. The evidence submitted by Plaintiff does nothing to rebut the strong presumption against retaliation in this case.

While not specifically mentioned in her charge of discrimination, Plaintiff's letters to Allstate fail to assert a claim for retaliation. Lowery asserts that she sent letters to Allstate complaining of discrimination on October 12, 2003, March 23, 2004, April 15, 2004, January 5, 2005, and February 7, 2005. She also contends that her attorney wrote a letter to Defendant complaining of discrimination on April 15, 2004. First, as with the 1993 discrimination claim, several of these letters were written more than a year before the decision to terminate Plaintiff's employment. As the Fifth Circuit noted in *Patton*, the longest interval found to support a retaliation claim in this circuit was fourteen months, in a case where plaintiff's supervisor made disparaging remarks at least twice a week about an EEOC charge of discrimination. 95 F.3d 1148, *3 (citing *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 41 (5th Cir. 1992)). The February 26, 2004 letter does not even refer to any discrimination; it merely details Plaintiff's "personal and professional" concerns. Pl. App. 581-84. While other letters do allege race discrimination or question whether Mobly's acts are racially motivated, there is no evidence that these letters were connected in any way to Allstate's decision to terminate Lowery's employment. The Fifth Circuit has rejected a retaliation claim in similar circumstances:

> [T]he sole evidence of [defendant's] retaliation is that the reduction-in-force occurred after his discrimination complaints. On the other hand we have [defendant's] undisputed legitimate, nondiscriminatory reason for its employment action: a company-wide reduction-in-force. Without more than timing allegations, and based on [defendant's] legitimate, nondiscriminatory reason in this case, summary judgment in favor of [defendant] is proper.

*Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004).

The only other evidence in support of Plaintiff's retaliation claims are comments by Mobly. Plaintiff points to a comment by Mobly that she did not "fit in" the new structure. Pl. App. 635.

There is no evidence that this statement referred to Lowery's race or was racially motivated. Although Lowery is black, that such a statement was made, without more, is insufficient to attribute a racially discriminatory or retaliatory motive to it.

Plaintiff also contends that statements allegedly made by Mobly to another black employee, Victor Wilson, who brought race discrimination claims against Allstate support her retaliation claim. Plaintiff points to three statements allegedly made by Mobly: (1) that everyone would have been better off if Wilson had left after filing a lawsuit against Allstate; (2) that she could not trust Wilson as a result of his prior racial discrimination lawsuit; and (3) that she told Wilson it would be best if he left Allstate and had a career change. Pl. Resp. 27. Plaintiff also contends that Wilson received poor performance ratings after his lawsuit and that Mobly reassigned his high performing agents. None of these statements, however, demonstrates a causal connection between Lowery's lawsuit or complaints and her termination as part of the reduction-in-force. As Wilson testified, Mobly made these remarks in 2001, and his employment with Allstate ended in 2003. *Id*. at 427, 432. These "stray remarks" made to another employee four years before Defendant's decision to include Plaintiff in the reduction-in-force are simply too tenuous to demonstrate discriminatory intent. *M.D. Anderson Hosp. and Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000) ("Stray remarks, remote in time from [plaintiff's] termination, and not made by anyone directly connected with the RIF decisions, are not enough to raise a fact question about whether [defendant's] reason for terminating [plaintiff] was pretextual."). Further, the record reflects that Carnes, using the criteria set forth by Allstate, made the decision of which employees were included in the reduction-in-force. Def. App. 2 (Carnes Decl. ¶¶ 5-8). There is no evidence that Mobly made the decision to include Lowery in the reduction-in-force or that Mobly was an "individual . . . in a position to influence the decision."

*Russell*, 235 F.3d at 229.  Accordingly, there is not enough evidence from a few comments to rebut Allstate's legitimate, nondiscriminatory reason to include Lowery in the reduction-in-force.

The court finds that there is really little more than Lowery's subjective belief that her discharge was in retaliation for any protected activity, and her subjective belief alone is insufficient to demonstrate a causal link between Plaintiff's protected activity and the adverse employment action.  *Travis v. Board of Regents of the Univ. of Texas Sys.*, 122 F.3d 259, 266 (5th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998) (holding that the plaintiff's assertion of retaliation "is merely her own subjective belief, which is insufficient to create a jury question"); *see also McCoy*, 183 S.W.3d at 555 ("An employee's subjective belief of discrimination or retaliation, no matter how genuine, cannot serve as the basis for judicial relief.") (citations omitted)).

The court concludes that here, as in *Roberson*, Allstate has established a legitimate, nondiscriminatory reason for Plaintiff's inclusion in the reduction-in-force, her Unacceptable performance rating, as well as company need and seniority.  Defendant has also shown that non-protected employees were included in the reduction-in-force.  Insufficient evidence and a subjective belief that retaliation occurred cannot serve as a basis for liability when Allstate has presented evidence that establishes an adequate nondiscriminatory or non-retaliatory reason for Lowery's termination by a reduction-in-force.  Accordingly, even if Plaintiff's retaliation claim is timely, she has raised no genuine issue of material fact regarding the claim, and Allstate is entitled to judgment as a matter of law.

## IV.     Conclusion

For the foregoing reasons, the court determines that Plaintiff has failed to state a claim upon which relief can be granted against Defendants Sandra Mobly and Brian Viohl regarding her

defamation claim, and therefore **grants**  Defendants Sandra Mobly and Brian Viohl['s] Motion to Dismiss.  The court also determines that there are no genuine issues of material fact with respect to Plaintiff's race discrimination and retaliation claims, and therefore it **grants** Defendants' Motion for Summary Judgment.  The court **dismisses with prejudice** all of Plaintiff's claims.  The pretrial conference scheduled for November 30, 2007 at 3:00 p.m. is hereby **canceled**.

      **It is so ordered** this 29th day of November, 2007.

Sam A. Lindsay
United States District Judge